**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MICHAEL FLANAGAN,

               **Plaintiff,**

     **v.**                                  **1:13-cv-3836-WSD**

QUIKTRIP CORPORATION,

               **Defendant.**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on Defendant QuikTrip Corporation's

("Defendant" or "QuikTrip") Motion for Summary Judgment [33] and Motion for

Oral Argument [38].[1]

## I.    BACKGROUND

On July 28, 2012, Plaintiff Michael Flanagan ("Plaintiff" or "Flanagan")

visited a QuikTrip gas station in Lawrenceville, Georgia. (Def's Statement of

Material Fact ("DSMF") [34] ¶ 1). Plaintiff parked his vehicle at Pump 8, with the

driver side of his vehicle next to the pump. (<u>Id.</u> ¶¶ 3-4). Plaintiff stepped out of

his vehicle, swiped his credit card at the pump, and put the gas pump nozzle into

---

[1]    Defendant filed its Motion for Oral Argument seeking a hearing on its
Motion for Summary Judgment. Local Rule 7.1E provides that motions "will be
decided by the court without oral hearing, unless a hearing is ordered by the court."
LR 7.1E, NDGa. The Court determines that a hearing is not necessary and
Defendant's Motion for Oral Argument is denied.

his gas tank, which was located on the driver side of the vehicle.  (Id. ¶¶ 5-6).

While the gas was pumping, Plaintiff got his "re-fill cup" from his vehicle, walked

into the QuikTrip store and purchased a cup of coffee.  (Id. ¶ 7).  Plaintiff walked

back to his vehicle, put his cup on the roof of his car, and returned the gas pump

nozzle to its cradle on the pump.  (Id. ¶ 8).  Plaintiff walked a few steps to get the

glass cleaning squeegee from the windshield valet and he cleaned the driver side of

his windshield.  (Id. ¶ 9).  Plaintiff walked around the front of his vehicle, and as

he turned the corner toward the passenger side, he "stepped on something slippery

and [he] fell" to the ground.  (Flanagan Dep. 30:7-11).  Plaintiff's fall occurred at

approximately 10:00 a.m.  (DSMF ¶ 1).[2]

After he fell, Plaintiff saw on the ground a "spot," which was seven (7) or

eight (8) inches in diameter, circular, and dark gray or brown in color.  (Flanagan

Dep. 32:15-33:10; 41:18-20).  Plaintiff asserts that the spot was "roughly circular

in shape [and] looked like it had been caused by some sort of a liquid at one point,

but it had dried, mostly.  And [he] could clearly see the mark from [his] shoe in it,"

---

[2]     In his Response, Plaintiff "agree[d] with" Defendant's Statement of Material
Fact ¶ 1, which states that Plaintiff slipped and fell at approximately 10:00 a.m.
(Pl's Resp. [45] to DSMF ¶ 1).  To the extent Plaintiff, in his Statement of
Additional Facts ¶ 1, asserts that he slipped and fell at approximately 10:10 a.m.,
Plaintiff's citation, to page 21 of his deposition testimony, states that his accident
occurred at "[a]pproximately 9:00 or 10 o'clock [a.m.]" and does not support this
fact.  See Flanagan Dep. at 21:6-9; LR 56.1 B(1), NDGa.

which he described as a "smear."  (Id. 32:20-33:3; 47:17-22).  Plaintiff cannot

identify the liquid on which he claims he fell and he does not know the source of

the liquid or how long it had been on the ground before he fell.  Plaintiff testified:

> Q.   Do you know what you fell on, the substance?
>
> A.   No.  I don't know what it was.
>
> Q.   So I'm calling it "oil", but it doesn't necessarily have to be
> oil?
>
> A.   I have no way of knowing what it was.
>
> Q.   Okay.  Did you touch it?
>
> A.   No.
>
> Q.   Do you know how long it had been there?
>
> A.   It clearly had been there for some period of time, but I
> don't know how long.
>
> Q.   Why do you say it had been there for some period of time?
>
> A.   . . . I didn't, you know, analyze it.  But it appeared that it
> had been a liquid at one point, but was clearly no longer completely
> wet or anything like that.  It wasn't a puddle.  It was dried and it was
> light - - it was a relatively light color.

(Id. at 34:17-35:13).

On October 18, 2013, Plaintiff filed his Complaint [1.1] in the State Court of

Gwinnett County, Georgia.  Plaintiff asserts claims for negligence, alleging that

Defendant failed to keep its premises safe and failed to remove a hazard.  Plaintiff

also alleges that Defendant failed to train its employees concerning safety procedures for inspecting, cleaning and maintaining the premises, and failed to adopt policies and procedures to make sure that appropriate inspections of the premises were performed.

On November 19, 2013, Defendant removed the Gwinnett County Action to this Court based on diversity of citizenship jurisdiction.  (Notice of Removal [1]).

On September 8, 2014, Defendant moved for summary judgment. Defendant asserts that it maintains a reasonable inspection procedure, that the procedure was in place at the time of Plaintiff's fall, and that a QuikTrip employee actually inspected the area of Plaintiff's fall within thirty (30) minutes of the accident and did not observe any liquid where Plaintiff fell.

## II.    DISCUSSION

### A.    Legal Standard on Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record."  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    B.    Legal Standard on a Negligence Slip-and-Fall Claim in Georgia

A plaintiff asserting a cause of action for negligence under Georgia law must establish (1) the existence of a duty on the part of the defendant, (2) a breach of that duty, (3) causation, and (4) damages.  Rasnick v. Krishna Hospitality, Inc., 713 S.E.2d 835, 837 (Ga. 2011) (citing John Crane, Inc. v. Jones, 604 S.E.2d 822, 825 (Ga. 2004)).

Under Georgia premises law, a landowner owes an invitee a duty to "exercise ordinary care in keeping the premises and approaches safe."  O.C.G.A. § 51-3-1; Bartlett v. McDonough Bedding Co., 722 S.E.2d 380, 382 (Ga. Ct. App. 2012) (quoting Gaydos v. Grupe Real Estate Investors, 440 S.E.2d 545, 547 (Ga. Ct. App. 1994)).  A landowner is not an insurer of the invitee's safety.  Id. (quoting Gaydos, 440 S.E.2d at 547).  The duty extends to an invitee where the landowner has actual or constructive knowledge of a hazard *and* the invitee, in the exercise of ordinary care, lacks knowledge of the hazard.  See Whitley v. H & S Homes, LLC, 632 S.E.2d 728, 729 (Ga. Ct. App. 2006) (citing Ford v. Bank of Am. Corp., 627 S.E.2d 376, 378 (Ga. Ct. App. 2006)); see also id. (quoting Garrett v. Hanes, 616 S.E.2d 202, 204 (Ga. Ct. App. 2005)) ("The true basis for an

owner's liability is his superior knowledge of the existence of a condition that could subject his invitees to an unreasonable risk of injury."). Put another way, "a plaintiff must show that he was injured by a hazard that the owner 'should have removed in the exercise of ordinary care for the safety of the invited public.'" Ahuja v. Cumberland Mall, LLC, 821 F. Supp. 2d 1317, 1324 (N.D. Ga. 2010) (quoting Am. Multi-Cinema, Inc. v. Brown, 679 S.E.2d 25, 27 (Ga. 2009)).

"[I]n a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to the actions or conditions within the control of the owner/occupier." Robinson v. Kroger, 493 S.E.2d 403, 414 (Ga. 1997); see also Am. Multi-Cinema, 679 S.E.2d at 27-28.

C.   Analysis

It is undisputed that Defendant did not have actual knowledge of the liquid that allegedly caused Plaintiff's fall. Plaintiff argues only that Defendant had constructive knowledge of the hazard or that there is, at least, an issue of fact whether Defendant had constructive knowledge.

A plaintiff alleging constructive knowledge must show that "(1) an employee was in the vicinity and could have easily seen and removed the hazard, or (2) the hazard was present long enough that it would have been discovered

through an inspection taken with reasonable care." Heath v. Wal-Mart Stores East, LP, 697 F. Supp. 2d 1373, 1379 (N.D. Ga. 2010) (citing Watkins v. Home Depot U.S.A., Inc., 576 S.E.2d 563, 564 (Ga. Ct. App. 2002) & Roberson v. Winn-Dixie Atlanta, Inc., 544 S.E.2d 494, 495 (Ga. Ct. App. 2001)). "[T]o survive a motion for summary judgment, a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard." Am. Multi-Cinema, 679 S.E.2d at 27-28.

> 1.  Whether a QuikTrip employee was in the immediate vicinity and could have easily seen and removed the hazard

In Georgia, "showing an employee merely working in the immediate area of a foreign substance is not enough. The employee must have been in a position to have easily seen and removed the substance." See Lovins v. Kroger Co., 512 S.E.2d 2, 4 (Ga. Ct. App. 1999) (citing Hardee's Food Sys. v. Green, 502 S.E.2d 738, 740-741 (Ga. Ct. App. 1998)). Georgia courts have consistently rejected that "liability can be shown by nothing more than the fact that the defendant's employee was in the immediate area of the hazardous substance. In every case, the rule . . . also requires a finding that the defendant's employee had an opportunity to discover and remove the hazard . . . ." Warberg v. St. Louis Bread Co., Inc., 565 S.E.2d 561, 564 (Ga. Ct. App. 2002) (citation omitted).

In <u>Lovins v. Kroger Co.</u>, 512 S.E.2d 2 (Ga. Ct. App. 1999), a Kroger employee put spinach dip on a table for customers to sample, checked the area, saw it was clean, and went behind a nearby counter to prepare a cheese basket. Less than ten (10) minutes later, the plaintiff, who was pushing a shopping cart into the area, slipped on spinach dip and fell. <u>Id.</u> at 3. The employee who was working in the cheese section testified that she was not facing the area of the fall, that a display case blocked her view of the area, and that, after the plaintiff's fall, she turned but could not see the plaintiff until she stood on her toes. <u>Id.</u> at 4. Another employee was also in the area, but was working in the back of the bakery section with her back turned to the area of the accident. <u>Id.</u> The court held that, "[u]nder these circumstances, it may not be said that the employees could have easily seen the dip on the floor so as to impute constructive knowledge." <u>Id.</u>

In <u>Matthews v. The Varsity, Inc.</u>, 546 S.E.2d 878 (Ga. Ct. App. 2001), the plaintiff alleged that she slipped on liquid and fell, although she did not see any liquid before she fell and did not inspect the area after her fall. An employee was working twelve (12) to fifteen (15) feet away and saw the plaintiff fall. <u>Id.</u> at 880. The court found that there was no evidence to support that the employee easily could have seen the alleged liquid before the fall, including because the plaintiff stated that, even at close range, she could not see any liquid in the area before she

fell.  Id.  The court held that, "[i]nasmuch as the purported hazard was not readily visible to [the plaintiff], she did not establish that [defendant's employee] who was 12 to 15 feet away could have easily seen and removed it."  Id.

Here, the QuikTrip location at issue consists of an indoor convenience store, a parking lot and a gas pump area.  The parking spaces are located in front of the store, between the store and the gas pump area.  Plaintiff's fall occurred in the gas pump area, specifically Pump 8, which is located "to the right center looking at the [gas pump] bays from the store."  (Aiken-Phillips Dep. at 18:10-15; 71:24-72:3 & Ex. 2).  Inside the store is a "check stand" or central kiosk, located toward the left-center of the store, with three cash registers, a computer, and an area for filling out paperwork.  (Id. at 16-19 & Ex. 2).

Plaintiff testified that he "didn't recall" seeking any QuikTrip employees outside of the store before, or after, he fell.  (Flanagan Dep. 35:20-23).  At the time of Plaintiff's fall, there were three (3) QuikTrip employees on duty: manager Nolan Phillips ("Phillips") and clerks Joshua Aiken-Phillips ("Aiken-Phillips") and Shemika Love ("Love").[3]  Aiken-Phillips testified:

> Q.    Where were you when you first learned that Mr. Flanagan had sustained a fall?

---

[3]    Nolan Phillips is not related to Joshua Aiken-Phillips.

A.     I was running the register.  He walked in the store, and he said he slipped and had broken his arm.

Q.     Did you see him fall?

A.     No, sir.

. . .

Q.     Where was Ms. Love at that time?

A.     I believe she was back stocking a cooler.

Q.     And where was Mr. Phillips?

A.     He was taking care of paperwork in the back of the check stand.

. . .

Q.     Were you in a position to be able to see the area around Pump 8?

A.     From where I was standing?

Q.     Yes.

A.     It was possible; but I didn't see it, no.

Q.     Okay.  Was it possible for Ms. Love or Mr. Phillips to have seen the fall?

A.     No.

(Aiken-Phillips Dep. 15:10-16:16).

Plaintiff claims that, because Aiken-Phillips stated it was "possible" for him to see the area of Pump 8 from where he was standing, he must have been able to

see the liquid on the ground.  The Court disagrees.  Although Plaintiff testified that the employees could see his vehicle from inside of the store, when asked whether "they [could] have seen the spot that [he] fell on from . . . inside the store," Plaintiff replied that he "honestly do[es]n't know."  (Flanagan Dep. at 37:14-22). Plaintiff also stated that he did not see the liquid before he fell, including when he walked into the store, while he purchased his coffee inside the store, or when he walked back to his vehicle.  (See id. at 27-30).  Plaintiff testified:

> Q.     Was the oil completely behind the front of your vehicle?
>
> A.     I think it was, yes.
>
> . . .
>
> Q.     Was there anything that was preventing you to see [sic] the spot had you looked down?
>
> A.     For the period of time that I was in the - - directly in front of my car, my car was - - was blocking it.
>
> Q.     Uh-huh.  What about when you were turning?
>
> A.     I don't think I got around the car enough to be in clear sight of it.  It really just jumped out on me - - at me, to be honest.

(Id. 30:7-14; 41:9-17).

Even if Aiken-Phillips could see the *area around Pump 8*, there is no evidence to support that he could have seen *the liquid on the ground*, from where he was standing at the register inside the store.  The evidence is that, from where

he was standing, it was "possible" for Aiken-Phillips to see the area around Pump

8, and likely Plaintiff's vehicle; that Pump 8 is located to the "right center" of the

store and the register where Aiken-Phillips was standing; and that the liquid was

located on the ground near the front corner of the passenger side of Plaintiff's

vehicle, the area of Pump 8 farthest away from the store.  Insofar as Plaintiff's

vehicle appears to have blocked Plaintiff's view of the liquid while he was facing

the driver side of his vehicle, there is no evidence to support that Aiken-Phillips

could have seen the liquid from where he was standing, also facing the driver side

of Plaintiff's vehicle, at an unknown distance inside the store.  Plaintiff does not

state from what distance he allegedly was able to see the liquid, or that he could

see it while standing, and, although he identified approximately the area where he

fell, Plaintiff was not able to point to the liquid in any of the pictures of the area

around Pump 8 taken just after his fall.[4]  See, e.g., Matthews, 546 S.E.2d at 880

("Inasmuch as the purported hazard was not readily visible to [plaintiff], she did

not establish that The Varsity's employee who was 12 to 15 feet away could have

easily seen and removed it.").  There is no evidence that QuikTrip employees were

in the "immediate vicinity" of the liquid, and there is no evidence that they were in

---

[4]     The Court notes that Plaintiff testified first that the spot was "dark in color
. . . a dark gray or brown, [but] not black," but later testified that the spot was
"dried and it was light - - it was a relatively light color."  (Compare Flanagan Dep.
at 33:6-10 with id. at 35:11-13).

a position to have seen the liquid and removed it.  See id. ("Showing that an employee was merely working in the immediate area of a foreign substance is not enough; the employee must have been in a position to have easily seen the substance and removed it.").[5]

> 2. Whether QuikTrip exercised reasonable care in the inspection of its premises

Plaintiff next argues that QuikTrip had constructive knowledge of the liquid he claims caused his fall because QuikTrip failed to maintain a reasonable inspection procedure.  Defendant argues that it did not have constructive knowledge of the liquid that allegedly caused Plaintiff's fall because it maintains a reasonable inspection procedure, the procedure was in place at the time of

---

[5]     That Aiken-Phillips stated it was "possible" for him to see "it" from where he was standing—even if "it" means, as Plaintiff appears to argue, the substance—is not sufficient to infer that QuikTrip had constructive knowledge in view of Aiken-Phillips's unequivocal testimony that he did not observe any substance on the ground, before or after Plaintiff's fall.  "In a slip and fall case, Georgia courts recognize that 'an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility.'" Heath, 697 F. Supp. 2d at 1382 (quoting Lovins, 512 S.E.2d at 4); see also Medders v. Kroger, 572 S.E.2d 386 (Ga. Ct. App. 2002) (employee's "acknowledgment that something is 'possible' is mere speculation.  For an inference to be sufficient to create a genuine issue of fact precluding summary judgment, it must be reasonable and must amount to more than mere speculation, conjecture, or possibility."); Brown v. Host/Taco Venture, 699 S.E.2d 439, 444 (Ga. Ct. App. 2010) (on summary judgment, "a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists.").

Plaintiff's fall, and a QuikTrip employee actually inspected the area of Plaintiff's fall thirty (30) minutes before the accident and did not observe any liquid on the ground.

"Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure." Kauffman v. Eastern Food & Gas, Inc., 539 S.E.2d 599, 601 (Ga. Ct. App. 2000). "[T]o prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." Brown v. Host/Taco Venture, 699 S.E.2d 439, 442 (Ga. Ct. App. 2010). "[T]o withstand a motion for summary judgment, the plaintiff need not show how long the hazard had been present unless the owner has demonstrated its inspection procedures." Shepard v. Winn Dixie Stores, Inc., 527 S.E.2d 36, 38 (Ga. Ct. App. 1999) (citations omitted).

In determining whether an inspection is adequate as a matter of law, the Court must consider the circumstances of each case. The Georgia Court of Appeals has consistently held:

> The length of time the substance must remain on the floor before the owner should have discovered it and what constitutes a reasonable inspection procedure vary with each case, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location.

Shepard, 527 S.E.2d at 39; see also J.H. Harvey Co. v. Reddick, 522 S.E.2d 749, 754 (Ga. Ct. App. 1999); Sharpton v. Great Atl. & Pac. Tea Co., 145 S.E.2d 101, 103 (Ga. Ct. App. 1965).  For example, "where the nature of the business creates conditions which cause slip and falls to occur with some frequency," such as in a supermarket or fast food restaurant, "[u]nder those circumstances, [Georgia courts] have held that premises owners have a duty to inspect with greater frequency." Patrick v. Macon Hous. Auth., 552 S.E.2d 455, 460 (Ga. Ct. App. 2001) (citations omitted); see, e.g., Jones v. Krystal Co., 498 S.E.2d 565 (Ga. Ct. App. 1998) (failure to inspect fast food restaurant during 20-minute period may be unreasonable where, among others, color of floor made debris difficult to see, receptacle was located near counter where food and beverages were served, and employees stood nearby and could have seen area); Shepard, 527 S.E.2d 36 (jury question whether 30 minute inspection period reasonable where store filled table with crushed ice and produce knowing customers will remove the produce and likely cause ice to spill on floor); Food Lion, Inc. v. Walker, 660 S.E.2d 426, 429 (Ga. Ct. App. 2008) (although store dust mopped hourly and manager walked through area 15-20 minutes before fall, inspection procedure may not be reasonable because store "knew its fresh chicken leg quarters were on sale and that they inevitably dripped a mixture of blood and water on the floor" in area where

plaintiff fell).  Put another way, "a prior history of such a number of similar hazardous occurrences or other facts that would put a proprietor on notice of the likelihood of the subject incident occurring . . . create[s] a correspondingly higher duty on the proprietor to take appropriate prophylactic measures."  Pickering Corp. v. Goodwin, 534 S.E.2d 518, 520 (Ga. Ct. App. 2000).

"However, the proprietor is under no duty to continuously patrol the premises in absence of facts showing that the premises are unusually dangerous."  Alterman Foods, Inc. v. Ligon, 272 S.E.2d 327, 329 (Ga. 1980);  see also Gibson v. Halpern Enterp., 655 S.E.2d 624, 627 (Ga. Ct. App. 2007) ("If a slip and fall occurs in an area that the proprietor has no reason to believe is dangerous, the proprietor is under no duty to constantly inspect that area.").  Thus, without some reason to be on notice of the likelihood of a given hazard arising, "a proprietor is permitted a reasonable time to exercise care in inspecting the premises and maintaining them in a safe condition."  Alterman Foods, 272 S.E.2d at 329; Gootee v. Target Corp., No. 1:05-cv-887-TCB, Doc. No. 48 at 8 n.2 (N.D. Ga. Mar. 5, 2007) aff'd, 256 F. App'x 253 (11th Cir. 2007) ("The issue is whether Target had *reasonable* inspection procedures in place.  Gootee has failed to demonstrate that Target's zoning procedure was not reasonable under the circumstances, particularly given the fact that there had been no prior incidents involving the

risers."); compare Burnett v. Ingles Markets, 514 S.E.2d 36 (Ga. Ct. App. 1999) (jury question on whether inspection every 15 minutes was reasonable where store knew children were throwing grapes) with Wallace v. Wal-Mart Stores, 612 S.E.2d 528 (Ga. Ct. App. 2005) (inspection 15-20 minutes before fall reasonable where no evidence store had knowledge of any particular risk grapes might be on floor).

In Patrick v. Macon Housing Authority, 552 S.E.2d 455 (Ga. Ct. App. 2001), the plaintiff slipped and fell on water in a common area laundry room of an apartment complex. The evidence showed that the laundry room was inspected every two hours, and that an employee had inspected the laundry room approximately an hour and a half before the fall and did not see any water on the floor. Id. at 459. The court held that the inspection procedure was reasonable under the circumstances, including because the defendant had no reason to believe there were any dangerous conditions in the laundry room that could cause someone to slip and fall, there was no evidence that water had ever been spilled on the floor, and there was no evidence that anyone had previously slipped and fell in the laundry room or any other common area of the complex. Id. at 459-60.

In Quarles v. Georgia Service Systems, LLC, 588 S.E.2d 338 (Ga. Ct. App. 2003), the plaintiff slipped and fell on a wet, allegedly wrinkled mat outside of a restaurant. The owner testified that he has "a general inspection procedure of

conducting a walk-through inspection of the grounds surrounding the restaurant prior to the opening of the restaurant for business," that he followed this procedure on the day of the accident, and that he saw no wrinkles in the mats outside the restaurant. Id. at 340. In rejecting the plaintiff's argument that the restaurant should be required to inspect the premises more frequently, the court stated that, if "the slip and fall occurs in an area that the proprietor has no reason to believe is dangerous, [he] is under no duty to constantly inspect the area." Id. The evidence showed that the mats had been in front of the restaurant for at least two years; that no other person ever tripped or fell over the mats; that on the day of the accident, the restaurant served approximately 955 meals, and no other customer reported any problem with the mats; and that the owner inspected the mats approximately an hour and fifteen minutes before the fall and he did not see any hazards. Id. The court held that, under these circumstances, the restaurant's inspection procedures were reasonable and the plaintiff failed to show constructive knowledge.

Here, Defendant asserts that it maintains a reasonable inspection procedure, that the procedure was in place at the time of Plaintiff's fall, and that a QuikTrip employee actually inspected the area of Plaintiff's fall thirty (30) minutes before the accident and did not observe any liquid on the ground. To support this argument that it did not have constructive knowledge of the liquid, QuikTrip relies

on the affidavit and deposition testimony of Joshua Aiken-Phillips, a QuikTrip employee who was working as a clerk on the day of Plaintiff's accident.

Aiken-Phillips described QuikTrip's inspection programs and identified specific tasks that require an employee to go outside of the store. At 5:00 a.m., 2:00 p.m., and 10:00 p.m., the manager about to start his shift performs a "ShiftWalk," which includes performing tasks outside of the store, including in the parking and gas pump areas. During their shifts, QuikTrip employees are also required to complete certain tasks listed on a Daily Activity Worksheet ("DAW"). There is no set time during a shift that an employee must complete any specific DAW task and the DAW tasks required to be completed vary depending on the shift. The morning shift—the shift during which Plaintiff's fall occurred— includes forty-nine (49) tasks, at least nine (9) of which require the employee to go outside of the store. (Aiken-Phillips Aff. ¶¶ 6-7).

Aiken-Phillips testified also that "QuikTrip employees are trained and instructed to monitor and correct any situation with respect to the floor or outside grounds as they work and walk through the areas and to pick up any debris or clean any spills on the floor or outside grounds." (Id. ¶ 8). He stated that QuikTrip employees are instructed to clean up spills immediately, how to clean up oil spills, and that whenever he sees a spill outside on the premises, he always cleans it up.

(Id.; see also Aiken-Phillips Dep. at 47-50; 54).  Love also stated that she "will go outside to the gas bays to help customers on a daily basis," and, if she notices any unsafe conditions, she removes them.  (Love Aff. ¶¶ 8-9).  Aiken-Phillips stated that, at least once per day, a QuikTrip employee inspects the parking lot and gas pump areas specifically looking for oil spills, and, in addition to the daily inspection, "if we have see [sic], like, a big oil spot like that, we're instructed to clean it up.  We can't just leave spots for people to slip on."  (Aiken-Phillips Dep. at 69:10-70:16).  Aiken-Phillips testified that he has worked for QuikTrip since 2011, and, although he has seen and cleaned up oil spills in the parking lot, he was not aware of anyone ever falling at QuikTrip, including in the parking lot or near the gas pumps.  (Id. at 67-70).

Aiken-Phillips also testified that QuikTrip's inspection procedure was being followed on the day of Plaintiff's fall.  On July 28, 2012, Aiken-Phillips arrived at QuikTrip at approximately 5:55 a.m. and he noticed that Phillips had already completed the ShiftWalk.  (Aiken-Phillips Aff. ¶ 4).  Aiken-Phillips stated that, before Plaintiff's fall, he inspected the area around Pump 8 at least three (3) times, including while performing some DAW tasks outside of the store, and he did not observe any liquid on the ground.  (Aiken-Phillips Dep. at 46, 78-79).  Approximately thirty (30) minutes before Plaintiff's fall, from 9:00 a.m. to

9:30 a.m., Aiken-Phillips filled the windshield valets, which "took [him] outside, into the parking lot and in and around the Pump 8 area at 9:30 a.m., and [he] saw no oil spills." (Aiken-Phillips Aff. ¶ 7; <u>see also</u> Aiken-Phillips Dep. 78-79). Love also testified: "When I went outside prior to 10:00 a.m. on July 28, 2012, I would have removed visible unsafe conditions, if I had found any. I recall there being no such visible unsafe conditions." (Love Aff. ¶ 9).

The evidence is that QuikTrip employees regularly go outside of the store, including to perform required DAW tasks throughout their shift; QuikTrip instructs its employees to constantly "monitor and correct any situation with respect to the floor or outside grounds as they work and walk through the areas and to pick up any debris or clean any spills on the floor or outside grounds;" and pursuant to this inspection program, QuikTrip employees inspected the area around Pump 8 several times before Plaintiff's fall and did not observe any liquid in the area. Other than Plaintiff, there is no evidence in the record that any other person—customer or employee—ever slipped and fell at QuikTrip, including outside or near the gas pumps, and there is no evidence suggesting that anyone saw or complained of liquid on the premises that day. There is no evidence to support that QuikTrip was aware of conditions in the area of Plaintiff's fall that required more frequent inspections. Under these circumstances, the Court finds that QuikTrip's inspection

procedure was reasonable.[6]  See Patrick, 552 S.E.2d at 459-60; Quarles, 588

S.E.2d at 340.

Although the Court concludes that QuikTrip's inspection procedure was

reasonable as a matter of law, even if it was not, the evidence is that Aiken-Phillips

actually inspected the area of Plaintiff's fall thirty (30) minutes before the accident

and he did not observe any liquid on the ground.  In Georgia, "[r]egardless of the

adequacy of any inspection program, when an owner shows that an inspection

occurred within a brief period of time prior to an invitee's fall, the inspection

procedure was adequate as a matter of law and defeats an invitee's negligence

action."  Mucyo v. Publix Super Markets, Inc., 688 S.E.2d 372, 375 (Ga. Ct. App.

2009) (citing Medders, 572 S.E.2d at 388).  Although what constitutes a "brief

period of time" has not been defined specifically, Georgia courts have held that

inspections conducted within thirty (30) minutes before the injury-causing event

were adequate as a matter of law.  See, e.g., Hopkins v. Kmart Corp., 502 S.E.2d

476, 478-79 (Ga. Ct. App. 1998) (inspection conducted thirty minutes before fall

was adequate as matter of law); Ledford v. Wal-Mart Stores East, LP,

No. 3:09-cv-00021-JTC, Doc. 41 (N.D. Ga. Jan. 12, 2010) (granting summary

---

[6]      That Plaintiff's fall occurred outside, in an area paved with concrete, further
distinguishes the circumstances here from typical slip-and-fall accidents that occur
indoors, in supermarkets or other places with polished, non-porous floors that
become slippery even with a small amount of liquid.

judgment to defendant where store conducted periodic inspections and area of fall was inspected within thirty minutes before fall); <u>Wallace</u>, 612 S.E.2d at 529-32 (inspection conducted 15-20 minutes before fall adequate as a matter of law) (collecting cases).

Here, Plaintiff alleges that he slipped and fell on liquid in the outdoor gas pump area of a convenience store, where a slip-and-fall accident had never before been reported, QuikTrip had no reason to believe that there were any dangerous conditions in the area that could cause someone to slip and fall, and Aiken-Phillips inspected the area within thirty (30) minutes before Plaintiff's fall and he did not observe any liquid on the ground.  Aiken-Phillips's inspection of the area shows that QuikTrip exercised reasonable care in the inspection of its premises.  <u>See</u> <u>Hopkins</u>, 502 S.E.2d at 478-79.

There is no evidence that QuikTrip employees were in the immediate vicinity of the liquid, and there is no evidence that they were in a position to have seen the liquid and removed it before Plaintiff's fall.  Having found that QuikTrip exercised reasonable care in the inspection of its premises, the Court concludes that no reasonable juror could find that QuikTrip had constructive knowledge of the liquid that allegedly caused Plaintiff's fall.  QuikTrip's Motion for Summary Judgment is granted.

III.    **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that QuikTrip's Motion for Oral Argument

[38] is **DENIED.**

**IT IS FURTHER ORDERED** that QuikTrip's Motion for Summary

Judgment [33] is **GRANTED.**


**SO ORDERED** this 1st day of June, 2015.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE